OPINION OF THE COURT
David B. Saxe, J.
The Ansonia defendants move, after a liability determination against them, for the following relief: (a) an interlocutory judgment on the issue of liability as determined by the jury; (b) a stay of all further proceedings pending appeal; and (c) a protective order barring plaintiffs from discovery of the assets and financial status of individual Ansonia partners. By separate motion they seek an order setting aside the jury verdict.
The motions are denied in the discretion of the court.
INTERLOCUTORY JUDGMENT AND STAY
Recently, substantial emphasis has been placed on the importance of case management, best understood as an attempt to ensure the most expeditious, efficient and inexpensive *72 means to bring lawsuits from start to conclusion. Its importance is reflected in the number of booklets and documents published recently, focused on speeding up the litigation process. A Handbook on Case Management, issued by Hon. Stephen G. Crane, Administrative Judge of the Supreme Court, Civil Branch, New York County (Oct. 1996), and distributed to all Justices and court personnel, is devoted to suggesting and describing various mechanisms a court may adopt to arrive at case dispositions with maximum efficiency, minimum cost and limited expenditure of time. Similarly, the American Bar Association, Judicial Division, recently issued a booklet entitled Litigation Control: The Trial Judge’s Key to Avoiding Delay. These publications discuss ways to streamline litigation, including: monitoring compliance with discovery orders, requiring use of pretrial orders to plan and streamline the trial and supervising jury selection.
An extension of case management, "trial management”, ensures that the trial process itself is as streamlined and expeditious as it can be, for the benefit of parties, jurors and the court system itself.
Sometimes, in the interest of accelerating the trial process, a Judge will elect to bifurcate the trial, that is, to first hear the issue of liability, and then, if appropriate, have the same jury or a new jury hear and decide the issue of damages (see, 22 NYCRR 202.42 [a] [bifurcation of personal injury trials encouraged "where it appears that bifurcation may assist in a clarification or simplification of issues and a fair and more expeditious resolution of the action”]). For instance, the procedure is employed where there is a substantial likelihood that after a finding of liability, or an apportionment of fault among defendants, a settlement can be effectuated. It would be ironic indeed if such an attempt to speed and streamline a case were to result in unnecessary delays and prejudice to the ability of a prevailing party to enforce any ultimate money judgment.
Yet, case law supports defendants’ suggestion that where a bifurcated trial is not a "continuous trial” heard by a single jury, the court must issue an interlocutory judgment on the liability portion and stay the damages trial, thereby permitting the defendants to appeal from the interlocutory judgment.
The cases draw a distinction between cases in which a single jury hears a "continuous trial”, i.e., the damages portion immediately following the liability portion, and cases having "non-continuous” trials, where the jury is discharged after a liability trial, or where there is a break between the trial on liability and that on the issue of damages.
*73 The seminal case on the issue, Hacker v City of New York (25 AD2d 35 [1st Dept 1966]), addressed the question of whether, in a bifurcated action, a defendant was entitled to appeal from an unfavorable liability determination prior to the damages trial. The use of this "split trial” procedure was at that time new and novel in personal injury actions, and the Court initially addressed itself to approving the use of the bifurcation process in personal injury actions. The Court went on to approve the use of interlocutory appeals after a liability verdict: "Pragmatically, such an appeal, though unusual, stemming as it does from a comparatively recent and sparingly used procedure in a personal injury litigation, appears to have much the same justification as an appeal from an order granting summary judgment and directing an assessment of damages” (Hacker v City of New York, supra, at 37 [emphasis supplied]). The Court emphasized the distinction between a case where the issue of liability is tried separately, in advance of the damages trial, as was the case there, and cases where "the issues of liability and damages proceed to determination together, or in which the issue of liability is first determined by triers who promptly go on to hear the issue of damages” (Hacker v City of New York, supra, at 37).
Not addressed in so many words in Hacker (supra) was the question of whether the defendant in a bifurcated action has an absolute right to the entry of an interlocutory judgment or order from which an appeal can be taken following completion of the liability phase of the trial.
In Fortgang v Chase Manhattan Bank (29 AD2d 41 [2d Dept 1967]) the Second Department reconsidered its previous position that an order after a liability trial finding in favor of the plaintiff was nonappealable (see, Bliss v Londner, 20 AD2d 640 [2d Dept 1964]), particularly in view of the decision to the contrary by the First Department in Hacker (supra).
The trial court in Fortgang (supra) had issued an interlocutory judgment from which the defendant sought to appeal. The Appellate Division held, in a ruling more wide-ranging and definitive than that of the Hacker case (supra), that:
"Where a court orders a trial of the issues of liability prior to a trial of the issue of damages and there is a finding in favor of the plaintiff on the issues of liability, this court will entertain an appeal from such determination; and
"(a) Such appeal shall lie as of right whether the split trial determination was by the court or a jury; and
"(b) Such appeal shall lie as of right whether the appeal is from an order or an interlocutory judgment entered on the de *74 termination.” (Fortgang v Chase Manhattan Bank, supra, at 43.)
The distinction between continuous and ncmcontinuous trials was refined in Matter of Parker Constr. Corp. v Williams (35 AD2d 839 [2d Dept 1970]). In that matter, the issue of liability only was initially tried before a jury. When the jury held for the plaintiff, the trial court directed the damages portion of the trial to proceed immediately before the same jury. The defendant then brought a mandamus petition against the Trial Judge, seeking to compel him to sign and enter an interlocutory judgment. The Appellate Division held that the right of appeal as set forth in the Fortgang decision (supra) "was not meant to apply to those cases where liability and damages would be tried immediately and successively before the same jury, because in such cases it was recognized that the final judgment would promptly ensue and the defendant could appeal from the entire judgment without any undue prejudice” (Matter of Parker Constr. Corp. v Williams, supra, at 839 [emphasis supplied]). It therefore dismissed the mandamus proceeding.
In contrast, a mandamus petition was granted in Matter of Abel v Monteleone (39 AD2d 741 [2d Dept 1972]), where, after a verdict on liability in favor of the plaintiff, the court discharged the jury. The Appellate Division directed the Trial Judge to sign the interlocutory judgment, and the damages trial was stayed pending appeal. The decision gives no additional information as to the circumstances in terms of whether the damages trial was ready to proceed.
So, the general rule is clearly in the defendants’ favor on this question. Yet, even controlling principles of law should not be rotely applied without consideration of whether application of those principles would work an injustice in the circumstances presented.
On May 12, 1990, the ceiling collapsed in the croissant shop located in the Ansonia Apartments, a west side landmark building. One patron, Miriam Rosa Toigo D’Angeli, was killed, and a number of others were injured; 13 plaintiffs in all have commenced suit. There were about 40 named defendants, although they could be divided into two nominal groupings: the "Ansonia” defendants, consisting of owners of the premises and general partners of the partnerships with ownership interests in the premises, and the "non-Ansonia” defendants, consisting of, for example, architects, contractors, builders and others not connected with the ownership of the fee.
The determination that the trial should be bifurcated was made by a calendar Judge some years prior to trial. In the *75 interest of expediency, for purposes of the liability trial the remainder of the plaintiffs agreed that the estate of Ms. Toigo D’Angeli and one other plaintiff would represent all plaintiffs’ interests at trial, and the other plaintiffs would be bound by the liability result obtained by these two plaintiffs.
The jury found Ansonia Associates 80% liable for the plaintiffs’ injuries, with the remaining liability attributed to various design and construction professionals. In addition, the jury made a finding of gross negligence on the parts of Ansonia Associates and its three constituent partnerships (Stahlanson Associates, Comlo Associates, and Schussler Associates).
The issue then arose as to how to proceed with the damages trial. Since discovery on all aspects of the claims had been completed, the court could have planned at the outset to proceed immediately to the damages portion of the trial, with the same jury. Use of one jury for both phases of the trial is preferable in that it avoids time-consuming disputes over attempts typically made by both parties to reintroduce during the damages portion of trial evidence tending to prove or disprove liability.
However, because during jury selection the lawyers had known that the liability portion of the trial would be lengthy, and because it is difficult to find jurors willing to serve for such extended periods, the jury panel was initially informed that their service would be completed at the end of the liability portion of the trial.
Second, a short delay was necessary because the jury found that certain defendants were not only negligent, but were grossly negligent with regard to the condition of the ceiling. This gross negligence finding delayed the damages trial for a brief period, since the plaintiffs are entitled to discovery regarding those defendants’ assets and net worth so a punitive damages award may be properly made, and to do so a jury must know the defendants’ net worth. However, this limited issue does not require the type of extensive liberal discovery normally sought in the context of pretrial disclosure proceedings. Rather, the plaintiffs are entitled to obtain from the defendants sworn net worth statements and supporting documentation. This limited discovery need take no more than a few weeks.
It is appropriate at this juncture, in deciding whether the general rule should be applied in the specific circumstances presented, to consider the rationale supporting the distinction between "continuous” and "non-continuous” trials. As *76 discussed in the Parker case (supra), the right of appeal does not apply to "continuous” trials "because in such cases * * * the final judgment would promptly ensue and the defendant could appeal from the entire judgment without any undue prejudice” (35 AD2d, at 839). Additionally, it is instructive to examine the situations where the court has discretion, in the context of a "continuous” trial, to nevertheless issue an interlocutory judgment and thus effectively stay the trial to allow for an appeal of the liability verdict (see, Matter of Parker Constr. Corp. v Williams, 35 AD2d, at 840, supra). For instance, the exercise of such discretion may be appropriate when the liability verdict raises a question of disputed controlling law (see, Shipping Corp. v American Bur. of Shipping, 752 F Supp 173).
In this case, the particular circumstances cry out for a prompt final resolution at the trial level and one appeal thereafter from the final judgment. Putting off further trial proceedings and a final judgment at this point will serve only the defendants’ interests, by delaying the conclusion of the case even further, while causing only prejudice to the plaintiffs. The defendants here have nothing to lose and everything to gain from an interlocutory appeal.
It has been almost seven years since the accident; some of the plaintiffs are elderly. If the damages trial were to be completed prior to appeal, the defendants would be required to bond the judgment, securing the plaintiffs’ ability to collect, and the plaintiffs would be spared the need to go through two separate appeals. With an interlocutory appeal the defendants obtain an additional delay of at least 15 months, without any need to file a bond.
Furthermore, in my view there is little likelihood that the jury’s negligence finding as against the Ansonia defendants will be overturned; indeed, there is a more than sufficient basis in the trial record to support even the jury’s findings of gross negligence.
Evidence established, and both sides’ experts agreed that the ceiling which caused the plaintiffs’ injuries was a disaster waiting to happen. This is because suspended from the plaster ceiling above the croissant shop were ducts weighing 600 pounds, air conditioners weighing over 200 pounds, a sprinkler system weighing over 1,000 pounds, and a hung acoustical tile ceiling, none of which were attached to any structural support other than the plaster ceiling. There was testimony from which it could be found that the owners had numerous opportunities to *77 discover and remedy this dangerous condition over the years. There was also testimony of warning signs such as a falling chunk of plaster, and falling debris.
In addition, there was evidence from which the jury could infer that the Ansonia defendants purposely omitted any inspection of the building’s first floor in the offering plan submitted to the Attorney-General, despite the need for such an inspection. It could further be inferred that such an intentional omission was motivated by an intent to avoid detection of the structural problems which resulted in this accident.
The rationale supporting the denial of interlocutory appeals in the "continuous” trial situation can be applied with virtually equal justification where the delay between the liability verdict and the damages trial can be kept minimal. The application of the policy enunciated in 22 NYCRR 202.42, implementing appropriate case management procedures, can speed this case to its conclusion and would permit the defendants to appeal, almost as expeditiously and much more economically, with regard to the entire judgment, while protecting the plaintiffs from the kind of abusive delays for which the court system has been criticized for years.
A further delay of this trial would constitute a miscarriage of justice, and accordingly, this court denies that branch of the motion for an interlocutory judgment and a stay.
MOTION TO SET ASIDE VERDICT
There was more than ample evidence supporting the jury’s finding of negligence, its finding of gross negligence as against Ansonia Associates and its "Constituent Partnerships” and its apportionment of liability.
Nor is there any inconsistency between the jury finding that the individual defendants were not grossly negligent and its finding of gross negligence on the part of the owner-partnerships. The partnerships themselves, as entities which own property, may be viewed as having acted with gross negligence, regardless of whether its general partners individually are themselves found to have acted with the same degree of culpability. In fact, a partnership may be liable for the malfeasance of an employee, even without affirmative malfeasance by any partner (see, Caplan v Copian, 268 NY 445; Matter of Peck, 206 NY 55).
The motion to set aside the verdict is therefore denied.
*78 DISCOVERY AND PROTECTIVE ORDER
The jury made a finding of gross negligence on the part of defendants Ansonia Associates and its three "Constituent Partnerships”. It is undisputed that the finder of fact may award punitive damages under such circumstances, and that plaintiffs are therefore entitled to disclosure of the net worth of those defendants. The defendants merely protest that the net worth of the 21 individual general partners of the 3 "Constituent Partnerships” are not subject to such disclosure requirements, because the jury specifically found that these individuals were not liable for gross negligence.
Since general partners are individually liable for payment of partnership liabilities if they cannot be paid out of partnership assets (see, Partnership Law § 26; Ruzicka v Rager, 305 NY 191; Belgian Overseas Sec. Corp. v Kessler Co. 88 AD2d 559), they are burdened with the potential of liability for a punitive damages award regardless of how the jury viewed their individual culpability. Therefore, the net worth of the general partners of the defendant partnerships is relevant to the issue of the partnerships’ net worth for purposes of punitive damages (see, Vollertsen Assocs. v John T. Nothnagle, Inc., 48 AD2d 1007). Indeed, the deterrent effect of punitive damages will not occur unless the partners’ individual net worths are made known.
A protective order is therefore denied, and the individual partners are required to supply plaintiff with current, complete and accurate statements of net worth within 20 days of service of a copy of this order.